IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOMINIQUE PRESTON,

    *Plaintiff*,

    v.

UNITED STATES OF AMERICA, *et al*.,

    *Defendant*s.

Civil Action No. ELH-14-01920

**MEMORANDUM**

On June 13, 2014, plaintiff Dominique Preston filed a negligence suit against the United States of America (the "Government") and Carol Aviles, R.N., defendants, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq*., for acts allegedly committed by Aviles, beginning in 2009, while Aviles was an employee at a U.S. Department of Veterans Affairs ("VA") facility in Perry Point, Maryland. ECF 1 ("Complaint"). Plaintiff contends the Government was negligent in failing to prevent Aviles from engaging in an "inappropriate and ultimately abusive relationship" with Preston while she was a psychiatric patient at the Perry Point VA Medical Center, where Aviles worked as a nurse. *Id.* ¶ 38(c). Plaintiff maintains that the inappropriate relationship caused her to suffer mental and physical anguish, pain and suffering, and loss of income. *Id.* ¶ 38(d)-(e).[1]

Two motions filed by the Government are now pending. *See* ECF 4, ECF 10. On September 15, 2014, the Government filed a motion to dismiss (ECF 4, "Motion"), which is

---

[1] Plaintiff appended several exhibits to her suit. These exhibits include a copy of a letter dated October 4, 2013, from the VA to plaintiff's counsel (ECF 1-3 at 2-3); a copy of the USPS Certified Mail receipt for that letter (ECF 1-3 at 4); and a copy of the letter's USPS Tracking information (ECF 1-4). These exhibits are discussed, *infra*.

supported by a memorandum of law (ECF 4-1, "Memo") (hereinafter, collectively, the "Motion").  The Government has also moved to substitute itself for Aviles with respect to all claims lodged against her, pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act").  ECF 10.  The motion is supported by a memorandum (ECF 10-1) (collectively, the "Motion to Substitute").  *See Westfall v. Ervin*, 484 U.S. 292 (1988).

In the Motion, the Government argues that the case must be dismissed under Fed. R. Civ. P. Rule 12(b)(1) for lack of subject matter jurisdiction, because plaintiff failed to file suit within six months after notice of final denial of her administrative claim, as set forth in § 2401(b) of the FTCA.  ECF 4-1 at 14.  Plaintiff submitted a response in opposition on September 26, 2014 (ECF 6, "Opposition"), and the Government replied on October 8, 2014.  ECF 7 ("Reply").

Aviles responded to the Government's motion, arguing that if plaintiff's suit against the Government is dismissed, this Court must also dismiss all claims against her individually.  ECF 5.  Thereafter, the Government filed the Motion to Substitute, predicated on the certification that, at all times relevant, Aviles was acting within the scope of her employment.  ECF 10-1 at 2.  On January 7, 2014, plaintiff filed a response consenting to the Government's Motion to Substitute. ECF 11.

The Motion and the Motion to Substitute have been briefed, and no hearing is needed to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I will grant the Government's Motion to Substitute, but hold the Government's Motion to Dismiss in abeyance and stay the case, pending resolution of a similar case currently before the Supreme Court.

**Factual Background**

Plaintiff is a woman in her mid-50's with a history of emotional problems and mental illness.  ECF 1, ¶ 16.  She has bipolar disorder and suffers from post-traumatic stress disorder.  *Id.* ¶ 17.  In 2006, she began receiving psychiatric care at the Perry Point VA Medical Center, alternating between periods of inpatient and outpatient treatment.  *See* ECF 1-1 (administrative claim form); ECF 1, ¶ 32.  For much of that period, plaintiff claims that she received care from Nurse Carol Aviles and that, in 2009, Aviles initiated an "inappropriate and ultimately abusive relationship" with plaintiff.  ECF 1, ¶ 38(c); ECF 1-1.  As a result of the allegedly inappropriate relationship, plaintiff claims that she suffered damages, including mental and physical anguish, pain and suffering, and loss of income.  ECF 1, ¶ 38(c).  Further, plaintiff asserts that the Government's failure to "intervene, prevent or terminate this relationship" was the "actual and proximate cause of Plaintiff's damages."  *Id.* at ¶ 38(d).

On March 21, 2013, plaintiff initiated an administrative claim against the Government on her own behalf by filing a Standard Form 95 with the VA, pursuant to 28 U.S.C. § 2675(a).  *See* ECF 1-1.  On April 8, 2013, plaintiff's attorney, Roy L. Mason, sent a letter to the VA, advising that he "represents" plaintiff in her claim against the VA.  ECF 4-4 at 2 (letter).  The printed letterhead listed Mr. Mason's address as "4 Dock Street, Suite 200, Annapolis, Maryland 21401."  *Id.*

The Government issued a letter dated October 4, 2013, denying plaintiff's administrative claim.  ECF 1-3 at 2-3 ("Denial Letter").  It was addressed to "Roy L. Mason, Esq., 4 Dock Street, Suite 200, Annapolis, Maryland 21401."  *Id.* at 2.  The Denial Letter also stated, in capital letters: "SENT BY REGULAR AND CERTIFIED MAIL – RETURN RECEIPT

REQUESTED." *Id.*  However, plaintiff maintains that neither she nor her lawyer ever received the Denial Letter.  ECF 1, ¶ 10.

According to a United States Postal Service ("USPS") Certified Mail receipt, attached to the Complaint, the Denial Letter was mailed to Mr. Mason's address.  ECF 1-3 at 4 (receipt). According to the Declaration dated September 8, 2014, submitted by Patricia Trujillo, Esq., a staff attorney for the VA, the Denial Letter was "mailed to Ms. Preston's counsel's Annapolis, Maryland, address of record that he provided."  ECF 4-2, ¶¶ 1,7 ("Trujillo Aff.").  Specifically, she avers that the address was the same Dock Street address, *id.* ¶ 8, and the letter was postmarked October 10, 2013.  *Id.* ¶ 7.

Further, Ms. Trujillo asserts that the Denial Letter was sent by both certified mail and by ordinary mail on October 10, 2013.  *Id.*  A "USPS Tracking" sheet shows that the letter was processed through a USPS facility in Baltimore, Maryland on October 10, 2013.  ECF 1-4 ("Tracking Sheet").  It also shows that the Denial Letter arrived in Annapolis on October 11, 2013, that it went "Out for Delivery," and that there was a "Notice Left" the same day.  *Id.*  In addition, it indicates that the letter remained "Unclaimed" as of October 26 and 28, 2013, and that the letter was processed through USPS facilities in Baltimore again on November 5 and 6, 2013.  *Id.*

Ms. Trujillo asserts that the letter sent by ordinary mail was never returned to the Government.  ECF 4-2, Trujillo Aff. ¶ 8.  But, on November 6, 2013, the certified letter was returned to the VA with a yellow label dated "11/05/13" that reads, "Return To Sender[,] Unclaimed[,] Unable To Forward."  *See* ECF 4-6 at 3 (envelope).  Beneath the yellow label is a white label that reads, "RETURN to SENDER" and "UNCLAIMED."  *Id.*  The green return

receipt, ECF 4-6 at 4, was completed correctly with Mr. Mason's address but does not contain his signature.

In late April 2014, Preston attempted to "update" her administrative claim with an amended SF-95 form. *See* ECF 1, ¶ 7; ECF 1-2 (administrative claim form, signed April 21, 2014, and cover letter dated April 28, 2014). Among other things, it included a medical report and increased the damage claim from $500,000 to $770,000. *See* ECF 1-2 at 2, 5. At the time this "update" was filed, plaintiff claims she had not been provided "with a final disposition of her claim." ECF 1, ¶ 6. Ms. Trujillo maintains that "the VA's claim processing regulations do not permit amendments following the VA's denial of claims." ECF 4-2, Trujillo Aff. ¶ 10. Moreover, Ms. Trujillo avers that she spoke with plaintiff's attorney, Mr. Mason, by telephone on May 5, 2014, and informed him that plaintiff's claim had been denied in October 2013. *Id.* At Mr. Mason's request, Ms. Trujillo faxed him a copy of the Denial Letter on May 6, 2014. *Id.*; Complaint, ECF 1, ¶ 9.

On June 13, 2014, as noted, plaintiff filed her Complaint with this Court, about five and a half weeks after her attorney was made aware of the denial of her claim, and about seven months after the Government claims it provided effective notice of denial. *See* ECF 1. As noted, plaintiff attached several exhibits to her Complaint. *See* ECF 1, Exs. 1-5.

### Discussion

### A.

As noted, the Government has moved to substitute itself for Aviles with respect to all claims. ECF 10. Plaintiff consents to the substitution. *See* ECF 11. The Government's motion to substitute will be granted.

**B.**

**1.**

The Government has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1), claiming this Court lacks subject matter jurisdiction.  It focuses on the jurisdictional allegation in paragraph six of the Complaint.  ECF 4-1 at 8.  There, plaintiff alleged that by April 22, 2014, more than a year after she filed her original claim, "the United States had not provided Plaintiff with a final disposition of her claim."  ECF 1, ¶ 6.  Accordingly, plaintiff asserts the right to sue under 28 U.S.C. § 2675(a), which provides that "[t]he failure of an agency to make final disposition of a claim within six months after it is filed" entitles a claimant to deem the claim denied and bring suit.  *Id.* ¶ 5.  The Government argues, however, that it provided plaintiff with a final disposition on October 10, 2013, when it sent a notice of denial of plaintiff's administrative claim to her attorney's office, via regular and certified mail.  ECF 4-1 at 8.

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court."  *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).  A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pled in the complaint are insufficient to establish subject matter jurisdiction; or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'"  *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).  Such a motion should only be granted "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns,* 585 F.3d at 192; *see also Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns,* 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may ... resolve the jurisdictional facts in dispute by considering evidence ... such as affidavits.") (citation omitted); *Richmond, Fredericksburg, & Potomac R.R. Co.*, 945 F.2d at 768.

"When … a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *Vuyyuru*, 555 F.3d at 347; *see*, *e.g.*, *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The court may "hold an evidentiary hearing to determine whether the facts support the jurisdictional allegations." *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *accord Kerns*, 585 F.3d at 192.

In this case, no hearing is necessary. I will consider the Motion to Dismiss as bringing a factual challenge under Rule 12(b)(1), and I will consider plaintiff's exhibits, as well as matters outside the pleadings, without converting the Motion to Dismiss to one for summary judgment.

## 2.

A plaintiff may recover against the Government only to the extent that the Government has expressly waived sovereign immunity.  *See, e.g.*, *Welch v. United States,* 409 F.3d 646, 650 (4th Cir. 2005) (citing *United States v. Sherwood,* 312 U.S. 584, 586 (1941)); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (holding that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed") (internal quotations omitted).  Any "'limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'"  *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) (quoting *Soriano v. United States*, 352 U.S. 270, 276 (1957)).

Congress enacted the FTCA as a waiver of sovereign immunity for claims against the Government for money damages "arising out of torts committed by federal employees."  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008) (citing 28 U.S.C. § 1346(b)(1)).  With certain exceptions, the Act allows the Government to be held liable in tort "to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  Although "substantive state law establishes—and circumscribes—FTCA causes of action, 'federal law defines the limitations period.'"  *Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2011) (quoting *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991)).

The FTCA limitations period is codified at 28 U.S.C. § 2401(b), which provides two different limitations periods, as follows (emphasis added):

> A *tort claim against the United States shall be forever barred* unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues *or* unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

As the Government correctly notes in its Motion to Dismiss, although "§ 2401(b) uses the phrase 'or unless' to connect the two-year claim presentment and six-month court filing prerequisites, courts have uniformly interpreted the phrase to mean 'and.'"  Motion to Dismiss at 11 n.7;  *see, e.g.*, *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) (stating 28 U.S.C. § 2401(b) "provides that a claim must be 'presented in writing to the appropriate federal agency within two years after such claim accrues' and that a civil action must be commenced within six months after the final denial of the claim by the agency") (quoting § 2401(b)); *see also Ellison v. United States*, 531 F.3d 359, 362 (6th Cir. 2008) (reasoning any other reading "would effectively eliminate *any* court deadline" for initiating an FTCA lawsuit) (emphasis in original).

In its Motion to Dismiss, the Government argues that Preston's claim is time-barred because she failed to file suit within six months after "the date of mailing, by certified or registered mail" of the Denial Letter.  *See*, *e.g.*, ECF 4-1 at 11.  According to the Government, the plain language of § 2401(b) provides that the six-month period to file suit begins to run on "the date of mailing," and, therefore, any arguments regarding a claimant's date of actual notice, or lack thereof, are immaterial.  *Id.*

The Fourth Circuit has not yet considered the meaning of this provision in a published opinion.  However, the Fifth, Sixth, and Ninth circuits have each held that § 2401(b)'s six-month limitations period begins on the day the notice is first mailed, regardless of whether the notice is received.  *See Jackson v. United States*, 751 F.3d 712, 717 (6th Cir. 2014) ("The FTCA requires only that the agency mail the denial by certified mail. This the agency did. An added receipt requirement would constitute a burden on the agency to guarantee delivery, and would in fact be construing the FTCA in favor of plaintiffs suing the United States, when the Supreme Court has

instructed courts to do the opposite."); *Berti v. VA Hosp*., 860 F.2d 338, 340 (9th Cir. 1988) (holding six-month period began to run from date letter was mailed, not date letter was claimed by plaintiff's attorney); *Carr v. Veterans Admin.*, 522 F.2d 1355, 1357 (5th Cir. 1975) ("While it might be more equitable if the short period of limitations provided by 28 U.S.C. § 2401(b) commenced with receipt by the claimant of notice of the administrative agency's denial of the claim, the plain words of the statute defeat appellant's first argument."). The First and Eighth circuits have held that the six-month period excludes the "'initial or trigger day,'" *i.e.*, the date of mailing, and thus begins to run the day after the date of mailing. *McDuffee v. United States*, 769 F.2d 492, 494 (8th Cir. 1985) (quoting *Kollios v. United States*, 512 F.2d 1316, 1316-1317 (1st Cir. 1975)).

Relying in part on *Berti* and *Carr*, another judge in this District has held that the "'date of mailing' refers to the date on which the United States caused the final denial letter to go forward in the postal system," even when the letter is returned to sender, so long as it was sent to plaintiff's address of record. *Zander v. United States*, 843 F. Supp. 2d 598, 603 (D. Md.), *aff'd* 494 Fed. App'x 386 (4th Cir. 2012) (per curiam). In *Zander*, the Government sent plaintiff a denial letter twice—once to the plaintiff's address on record, and, after that letter came back return-to-sender, and with a forwarding address, to the plaintiff's forwarding address. *Id*. at 602. Relying on *Matos v. United States*, 380 F. Supp. 2d 36 (D. P.R. 2005), plaintiff argued that the six-month period began to run from the date the Government mailed the second letter, because the first mailing was sent to an incorrect address and was therefore "defective." *Id*. at 606, 609. The District Court rejected plaintiff's argument, reasoning: "The fundamental flaw in the notion

that the United States sent the denial letter to [plaintiff's] 'old address' is that the United States

had every reason to believe it was the correct address." *Id*. at 608.  It concluded, *id*. at 608-09:

> Therefore, it is disingenuous to insist that the United States sent the notice of final
> denial to the wrong address; all signs pointed to its being the correct address. …
> To … conclude [that the first mailing was defective] would be to contort the
> meaning of mailing under § 2401(b) to exclude otherwise valid mailings free from
> neglect or undue delay.  Thus distorting § 2401(b)'s clear language runs counter
> to the mandate that courts must construe waivers of sovereign immunity strictly.

The Fourth Circuit affirmed in an unpublished opinion, reasoning that the District Court

gave effect to "the plain language of § 2401(b) understood in accordance with its ordinary

meaning." *Zander*, 494 F. App'x at 388.  It rejected the contention that the date of mailing of the

notice of denial encompassed the date the letter was re-sent to the attorney.  *Id.*; *see also Kelson*

*v. Dep't of the Navy*, 13-cv-22-D, 2013 WL 6058205 at *2 (E.D.N.C. Nov. 15, 2013) (relying in

part on *Zander* and holding the limitations period ran from the date the first, not second, letter

was mailed to plaintiff, although she claimed she never received the first), *aff'd*, 568 Fed. App'x

217 (4th Cir.) (per curiam), *cert. denied*, ____ U.S. ____, 135 S. Ct. 284 (Oct. 6, 2014).

Here, as in *Zander*, plaintiff argues that her filing could not have been untimely because

the Government's initial mailing of the denial letter was "defective," and thus never triggered

§ 2401(b)'s limitations period.  ECF 6 at 4.  And, as in *Zander*, plaintiff relies on *Matos*, *supra*.

*Id.*

Similar to the case at bar, *Matos* involved a failed delivery, and an argument by the

Government that the plaintiffs' subsequent suit was barred for falling outside the six-month time

limit.  *Matos*, 380 F. Supp. 2d. at 38.  However, unlike this case, in *Matos* the Government had

three addresses on record: one for one of the plaintiffs and two for the plaintiffs' counsel (a

physical office address and a post office box address).  *See id*. at 39.  The Government

apparently obtained the addresses for plaintiffs' counsel from a cover letter sent with plaintiffs' administrative claim form.  The District Judge described the letter as follows:  "The covering letter appears on stationary with the firm's letterhead containing a post office box address centered directly under the firm's name.  In the right hand corner slightly below is a business address and telephone numbers."  *Id*. at 37.  The Government first sent the denial letter to the firm's physical business address, as shown on the letterhead.  *Id*. at 38.  Because the firm had moved shortly after the submission of plaintiffs' administrative claim, plaintiffs' attorney never received the first letter.  *Id*.  The Government acknowledged that its certified mail return-receipt had come back unsigned, and did not dispute the failed delivery.  *Matos*, 380 F. Supp. at 38.

The District Court held for the plaintiffs, reasoning as follows, *id.* at 39-40 (emphasis added):

> The attorney's letterhead contained two addresses as well as telephone numbers. The agency chose to send its denial letter to the *physical*, rather than the *mailing* address.  When no card confirming delivery to the physical address was received, defendant should have immediately sent a second notice to the mailing address it had for plaintiffs' counsel or, at the least, called counsel to inquire on the matter. Had it sent the denial letter to the mailing address, we would not be discussing this issue today....  Evidence that the certified letter was actually returned . . . demonstrates that the initial "mailing" was insufficient and defective. . . .
>
> This is not a case of lack of diligence on the part of plaintiffs.  Rather, what the Court has before it are clear circumstances of a defective notice. Defendants had the duty to resend the denial letter.  *They certainly had available the necessary information to ensure that delivery by certified mail be achieved by sending the denial to the mailing address of claimants' legal representative which remained unchanged and was in their record since September 16, 2002*, the date on which it received the plaintiffs' claims and the attorney's cover letter.

In the end, the District Court concluded that the Government's first mailing was "defective," and thus never triggered the six-month limitations period.  *Id*.

*Matos* relied on a Fourth Circuit case, *Powell v. Comm'r of Internal Revenue,* 958 F.2d 53 (4th Cir. 1992).  *See Matos*, 380 F. Supp. 2d at 39-40.  In *Powell*, the Internal Revenue Service ("IRS") mailed a deficiency notice by certified mail to the plaintiff's old address, even though the plaintiff had, prior to the mailing of the notice, filed a tax return under his current address.  *Powell*, 958 F.2d at 54.  After the undelivered notice was returned to the IRS, the agency took no further action to resend or notify the plaintiff.  *Id.*  When the plaintiff eventually received notice of the deficiency, and filed a petition to the Tax Court to contest the deficiency notice, the IRS moved for dismissal on the ground that plaintiff filed outside the statutory 90-day period, which, the IRS argued, was triggered by its initial mailing.  *Id.* at 54-55.

The relevant statute of limitations provided that "a notice of deficiency … is deemed 'sufficient' if it is mailed to the taxpayer at his 'last known address.'"  *Id.* at 55 (quoting 26 U.S.C. § 61212(b)(1)).  The Fourth Circuit held that the 90-day filing period had not been triggered by the IRS's initial mailing because it failed to use "due diligence" in sending the notice of deficiency.  *Id.* at 56-57.  In so holding, the Court emphasized that the IRS had the plaintiff's correct address in its possession, because it had processed the plaintiff's most recent tax return with plaintiff's correct address, and that it had failed to send the denial letter to that last known address.  *Id.* at 57 ("When notice of a deficiency is not sent to a taxpayer's last known address, subsequent actual notice of the deficiency will commence the running of the ninety-day period.").

Here, plaintiff relies on *Matos* as support for the allegation that the Government's mailing on October 10, 2013, was "defective."  ECF 4 at 6.  That reliance is misplaced.  Unlike the plaintiffs in *Matos*, for whom the Government had three addresses, or the plaintiff in *Powell*,

where the Government had old and new addresses on record, the Government in the instant case had only one address—that of plaintiff's attorney.  *See generally*, ECF 1-1 (Form 95 in which plaintiff does not give an address); ECF 4-4 at 2 (letter from plaintiff's attorney entering appearance).  In each of the attorney's communications with the VA, his address was listed as "4 Dock Street, Suite 200, Annapolis, Maryland 21401."  *See* ECF 4-4 at 2; ECF 1-2 at 1 (cover letter on updated Form 95).  The Denial Letter was sent to that address by two methods—ordinary mail and by return receipt requested.

To be sure, plaintiff claims her lawyer never received the letters.  But, she does not claim that the letters were sent to an incorrect address, or that the Government had a better address on record.  *See generally* ECF 1, ECF 6.  The "fundamental flaw" in plaintiff's argument is that the Government "had every reason to believe" that the Dock Street address "was the correct address."  *Zander*, 843 F. Supp. 2d at 608.  Indeed, the Government used the *only* address it had on record, and that address was correct.

Moreover, the Government sent two letters to plaintiff's counsel—one by certified mail and one by ordinary mail.  ECF 4-2, ¶ 8.  Although the letter sent by certified mail was unclaimed, and was ultimately returned to the VA, the letter sent by ordinary mail was never returned to the Government.  *Id.*

The Government mailed the Denial Letter on October 10, 2013.  *Id.*  Preston had until approximately April 10, 2014—six months later—to file suit in accordance with § 2401(b).  But, Preston did not file suit until June 13, 2014, about ten weeks after her April deadline.  *See* ECF 1.  Because the plaintiff commenced suit after the closing of the statutory period, it was not

timely under § 2401(b).  *See*, *e.g.*, *Zander*, 843 F. Supp. 2d at 608; *Kelson*, 2013 WL 6058205 at *2.

### 3.

Plaintiff argues that, even if the timing of the current suit fell outside the statutory period, equitable tolling principles should apply.  ECF 6 at 6.  In support of this argument, plaintiff states that she prosecuted her claim with due diligence and that the United States, after receiving the denial letter stamped "RETURN to SENDER," made no further effort to notify the plaintiff that her claim had been denied.  *Id.*

The Government attacks plaintiff's argument on two fronts.  It insists that (1) the limitations period set forth in the FTCA is "jurisdictional," and thus not subject to equitable tolling; and (2) that even if equitable tolling is allowed under the Act, the facts of this case do not entitle the plaintiff to equitable relief.  ECF 7 at 15-19.

However, the Government points out that the question of whether the FTCA permits equitable tolling is currently under consideration by the Supreme Court, in the case of *United States v. Kwai Fun Wong*, 134 S. Ct. 2873 (2014).  ECF 4-1 at 14, n.9.  That case was argued on December 10, 2014.  Certiorari was granted with respect to the decision in *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1033 (9th Cir. 2013) (en banc).

In *Wong*, plaintiff moved for leave to amend her complaint to include an FTCA claim before the six-month period expired.  *Id.*  However, she was not granted leave to amend until three weeks after the six-month period had expired.  *Id.* at 1034.  The District Court thereafter dismissed Wong's claim, holding that § 2401(b) "was 'jurisdictional,' and that equitable tolling was therefore not available to excuse Wong's untimely filing of her claim."  *Id.*  Sitting en banc,

the Ninth Circuit reversed, with the majority holding that § 2401(b) is a non-jurisdictional time limit, and thus subject to equitable tolling.  *Id.* at 1047.

Because the Supreme Court's holding in *Wong* may resolve the question of whether equitable tolling applies to § 2401(b), a decision at this time would be an inefficient use of the Court's resources.  Thus, I will hold the Government's Motion to Dismiss in abeyance, and stay this proceeding pending the final outcome of *Wong*.  *See*, *e.g.*, *Landis v. N. Am. Co*., 299 U.S. 248 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Amdur v. Lizars*, 372 F.2d 103, 106 (4th Cir. 1967) (holding that a District Court has "discretion to stay proceedings on its docket pending the outcome of a similar suit.").

## Conclusion

For the foregoing reasons, I will GRANT the Government's Motion to Substitute (ECF 10).  I will hold the Government's Motion to Dismiss (ECF 4) in abeyance, and STAY this case, pending resolution of the *Wong* case by the Supreme Court.  A separate Order follows, consistent with this Memorandum Opinion.

Date: January 15, 2015                                    _____/s/_____

                                                        Ellen Lipton Hollander
                                                        United States District Judge